Harold R. MITCHELL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16050.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 30, 1961.

Decided June 19, 1961.

Mr. John Bodner, Jr., Washington, D. C., with whom Mr. Edward F. Howrey, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Miss Doris H. Spangenburg, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., at time of argument, and Carl W. Belcher, Asst. U. S. Atty., at time of argument, were on the brief, for appellee. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, Chief Judge, and FAHY and DANAHER, Circuit Judges.

WILBUR K. MILLER, Chief Judge.

On August 3, 1959, Harold R. Mitchell was indicted for robbery. His trial began September 3, 1959, and on September 8 the jury found him guilty. In a *pro se* motion for a new trial, filed September 12, 1959, appellant asserted that a Government witness made a false statement, and that an important defense witness had not been called.[1] After a hearing, the motion was denied September 22, 1959. On that day, sentence was pronounced and on September 28 judgment and commitment were entered.

On September 29, 1959, Mitchell filed in the District Court a "motion for dismissal of sentence and reversal of verdict," in which, *inter alia*, he stated that by failing to call as a witness one Captain Brown of the District of Columbia Jail, his counsel had given him ineffective assistance. He prayed that a subpoena be issued for Captain Brown, "with his records, so that early clarification and summation of this case may be made." The following order disposing of this motion was entered October 6, 1959:

"Taking this as a motion under 28 U.S.C. § 2255, denied as the motion, files and records conclusively show the petitioner is entitled to no relief."

No appeal from this order was taken, and the appellant said and did nothing to indicate a desire to appeal therefrom.

On October 27, 1959, Mitchell filed in the District Court a second motion "for reversal of verdict and dismissal of sentence," in which he relied upon the identical grounds set forth in the first motion of September 29. By an order entered November 2, 1959, the trial judge denied the second motion because "the motion, files and records conclusively show the petitioner is entitled to no relief."

On November 25, 1959, Mitchell filed in the District Court an affidavit in support of an application to proceed without prepayment of costs, but did not file or even describe such an application. Instead, he filed on that day a letter to the sentencing judge asking him to reconsider points 1 and 3 of his first two motions. This was also treated as a motion under § 2255 and was denied for the reason previously given. The appellant did not appeal from this order.

---

1. These points were repeated and elaborated in later motions, as will appear.

On January 7, 1960, Mitchell filed a motion "questioning the trueness of indictment" and on January 8 filed a motion "for reduce [*sic*] in sentence," repeating some of the allegations of previous motions. On February 5, 1960, the trial judge denied the motion for reduction of sentence and, treating the January 7 motion as made under § 2255, denied it, "as the motion, files and records conclusively show the petitioner is entitled to no relief." No appeal from this order was taken.

The next activity was in this court. We appointed counsel to aid Mitchell in petitioning for leave to appeal *in forma pauperis*. Such a petition and briefs with respect to it having been filed with us, a majority of a division of this court entered an order September 16, 1960, allowing Mitchell "to proceed on appeal from the order of the District Court entered herein November 2, 1959, without prepayment of costs and that the joint appendix shall be printed at the expense of the United States."

The only order which had been entered in the District Court on November 2, 1959, was that which disposed of Mitchell's motion of October 27, 1959, "for reversal of verdict and dismissal of sentence." For convenience, we repeat it:

"Treating this as a motion under 28 U.S.C. § 2255, denied, as the motion, files and records conclusively show the petitioner is entitled to no relief."

It seems clear and beyond question, therefore, that this is an appeal from the foregoing order which denied Mitchell's second motion, held to have been filed under § 2255.

Before considering the appeal which was actually allowed by this court, we digress to notice appellant's belated contention that, despite the procedural steps

just described, this is or should be treated as a direct appeal from the judgment of conviction of September 28, 1959.

The contention is based upon the following order entered by the sentencing judge February 7, 1961, while this appeal from his order of November 2, 1959, was pending in this court:

"This Court has previously denied bail to this defendant pending his appeal from this Court believed to be a motion for relief under 28 U.S.C. [§] 2255. However, the Court is now informed that defendant had filed a paper with the Court within ten days after entry of judgment, which paper may be considered as a notice of direct appeal from conviction. The Court therefore will set bail of $4,000, this minimum figure being necessary because of defendant's prior felony conviction and two year sentence, and because the present conviction is one for armed robbery."

It is argued for the appellant that the foregoing order justifies the conclusion that this is a direct appeal from the judgment of conviction. We do not agree. The sentencing judge was misinformed when he was told that Mitchell had filed within ten days after entry of judgment a "paper [which] may be considered as a notice of direct appeal from conviction."

The only paper filed by the appellant within ten days after judgment was his motion of September 29, 1959, heretofore mentioned, which was brought to the attention of the trial judge when it was filed, and which he correctly treated as a motion under § 2255. The text of this motion is reproduced in the margin [2] to show it contains no word or hint of a request or desire to appeal from the judgment of conviction. To the contrary, it seems clear that the only relief sought

---

2. "Motion for Dismissal of Sentence and Reversal of Verdict in Criminal Case #703–59 pertinent to Inmate #122833, Harold Robert Mitchell, a resident of the District of Columbia; tried on September 3–8 1959 in the United States District Court, District Judge Luther W Youngdahl presiding.

"The defendent [*sic*] respectfully submits the following evidences to show cause and reason to substantiate his claims that the District of Columbia have

by the motion was further action by the District Court: the issuance of a subpoena for Captain Brown of the D. C. Jail, and an opportunity to present his testimony to that court. Thus the motion of September 29, 1959, fell far short of coming within the majority's liberal ruling in the Belton case,[3] where Belton had seasonably written a letter to the Clerk of the District Court asking that the trial judge "grant me the privilege of receiving an appeal * * *."

■ We conclude that erroneous and unfounded information was given to the sentencing judge when he was told Mitchell "had filed a paper * * * within ten days after entry of judgment, which paper may be considered as a notice of direct appeal from conviction." His order of February 7, 1961, granting bail pending appeal, therefore, furnishes no basis whatever for holding that the motion of September 29, 1959, was tantamount to a notice of direct appeal. The

only appeal before us is that which we allowed September 16, 1960, from the District Court order of the previous November 2, which denied the second motion under § 2255.

That appeal presents two questions: (1) was appellant's motion of October 27, 1959, properly treated as a motion under 28 U.S.C. § 2255, and (2) was it properly denied by the District Court?

■ 1. The motion of October 27 contains essentially the same allegations made in the first motion of September 29, heretofore reproduced in full. Like the first, it nowhere indicates an intention or desire to appeal from the judgment of conviction, and contains no language such as that in the Belton case, supra, which Judge Fahy's opinion held was sufficient to constitute a notice of appeal. Instead, it is clearly a prayer that the trial judge set aside the conviction and grant a new trial.

at this time wrongfully convicted him of a charge of robbery, incarcerated him in the District Jail and deprived him of his conjugal happiness and of his inviolable constitutional rights and freedom.

"Point I. That the defendant was convicted solely on circumstantial evidence provided, in part, by a witness for the United States of America, who, it can be proved perjured himself, knowingly or otherwise, on the stand. This can be proved by a witness for the defense who was not called by counsel at the time of trial. Namely one Capt. Brown, an officer of the D. C. Jail. This concludes Point One.

"Point Two. That it is the considered opinion of defendant that his counsel did not safeguard petitioners [sic] rights and afforded ineffective assistance in that witness aforementioned was not called; objections were not made to prejudicial irrellevancies [sic] made by District Attorney as to wifes [sic] age etc., thus affording a misconception of character of defendant to the jury.

"Point Three. That the pistol seized by Federal Agents in the defendents [sic] abode, and subsequently used in court as evidence against the defendent, [sic] was not of the caliber being sought by the agents as the robbery weapon.

"Further, said pistol was seized, without proper authority, namely by war-

rant. Further, defendents [sic] premises were entered and searched by said agents without warrant or permission.

"And further other items which were seized by agents, but were not produced in court, or produced as evidence, nor returned since to defendent, [sic] included ammunition not mated to the pistol seized, nor of the gun sought by agents, & a persuader, all used by the defendant in previous employment as a law enforcement officer.

"Point Four. That the defendants' constitutional privileges were revoked, in that, he was held incommunicado by Federal Agents in the City of Baltimore from 6 p. m. July 17th 1959 to noon of July 20th 1959 before arraignment in front of a United States Commissioner to learn on what charges he was being held.

"Petitioner Harold Robert Mitchell thus pleads for a hearing at the earliest opportunity on above motion, and pleads further the courts [sic] indulgence in the issuance of a subpoena in favor of Captain Brown of the D. C. Jail, with his records, so that ʻ early clarification and summation of this case may be made."

3. Belton v. United States, 1958, 104 U.S. App.D.C. 81, 259 F.2d 811.

The sentencing judge was correct, therefore, in treating the motion of October 27 as made under § 2255. We do not understand the appellant to contend otherwise in this appeal from the order of November 2, which denied the motion; for, if the motion of October 27 were in truth equivalent to a notice of direct appeal, the present appeal from the order denying it would obviously fail because the motion was untimely as such a notice.

■ 2. With respect to whether the trial judge properly denied, without a hearing, the motion of October 27, which we hold was correctly treated as made under § 2255, we need only point out that it was clearly "a second or successive motion for similar relief on behalf of the same prisoner" which, according to the express provision of § 2255, "the sentencing court shall not be required to entertain."

In some cases there is difficulty in determining whether the second or successive motion is "for similar relief." Here there is no room for two opinions on that score. The second motion of October 27 is plainly a repetition of the first, which was filed September 29. It contains nothing new, additional or different.[4]

■ It may be suggested, however, that the sentencing judge may, in his discretion, "entertain" a second or successive motion for similar relief, even though he is not required to do so; that in denying the second motion here without a hearing, he nevertheless "entertained" it; and that, as held in Taylor v. United States,[5] if the sentencing judge "entertains" a second or successive mo-

tion and denies it, an appeal from the order of denial authorizes review of the merits.

Such a suggestion gives rise to the question whether the trial judge necessarily "entertains" a second motion when he merely denies it without a hearing. That is to say, did the sentencing judge here "entertain" the motion of October 27, 1959, which he disposed of by the order entered the following November 2? The identical question was considered in my dissent in the Belton case, supra, where the following language appears in 104 U.S.App.D.C. beginning on page 91, 259 F.2d at page 821:[6]

"* * * The Ninth Circuit's Taylor opinion does not define the word 'entertain,' but the Supreme Court, in Brown v. Allen, 1953, 344 U.S. 443, 461, 73 S.Ct. 397, 97 L.Ed. 469 * * * defined the word as used in 28 U.S.C. § 2244, where its significance is the same as in § 2255:

" 'The word "entertain" presents difficulties. Its meaning may vary according to its surroundings. In * * * § 2244 we think it means a federal district court's conclusion, after examination of the application with such accompanying papers as the court deems necessary, that a hearing on the merits legal or factual is proper. * * * Even after deciding to entertain the application, the District Court may determine later from the return or otherwise that the hearing is unnecessary.'

I construe this as a holding that a decision to 'entertain' means a conclusion that a hearing on the merits is proper; from which it follows

---

4. Cf. Turner v. United States, 1958, 103 U.S.App.D.C. 313, 315, 258 F.2d 165, 167; and were the proceeding in habeas corpus, the court need not entertain a later petition which presents "no new ground not theretofore presented and determined." 28 U.S.C. § 2244 (1958), and see Smith v. United States, 1959, 106 U.S.App.D.C. 169, 173, 270 F.2d 921, 925.

5. 9 Cir., 1956, 238 F.2d 409.

6. My dissenting opinion was concurred in by Judges Danaher and Bastian; and Judge Prettyman, with whom Judge Burger joined, said: "I agree with Judge Miller's discussion of the Section 2255 problem, with the understanding that the discretion vested in a district court is subject to review for abuse * * *." Hence my definition of the statutory word "entertain" has been approved by a majority of this court.

that to 'entertain' means to conduct a hearing on the merits."

In this case, the sentencing judge did not conclude that a hearing on the merits of the motion of October 27, 1959, was proper; hence he did not *decide* to "entertain" it. And, as he did not hold a hearing on the merits, he did not "entertain" the motion.

Although § 2255 unequivocally says, "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner," a majority of this court held in the Belton case that an appellate court nevertheless may require him to do so if it concludes the sentencing judge abused his discretion in not "entertaining" it. We assume this means we should review the grounds presented in the second § 2255 motion, in the light of the record, to see whether the sentencing judge abused his discretion in not "entertaining" it. In order to determine, then, whether the grounds for the motion required a hearing under § 2255, in spite of the fact that it was "a second or successive motion for similar relief," it is necessary to make a brief summary of certain evidence presented at the trial.

On July 11, 1959, shortly after 10:00 p. m., John W. Ellis and his assistant, Harold W. Harrison, were closing the gasoline station at which they were employed. Ellis counted the money he had taken in and put it in a cash box in the third drawer of a metal filing cabinet. Just as Ellis stepped outside and was about to lock the door, an automobile drove up and the driver pointed a pistol at him and said, " 'Don't do that. * * * Turn around slowly, go back inside and get me the cash box that you just put that money in, out of the drawer.' * * * I said, 'Are you kidding?' and he says, 'I'm not kidding.' * * * When he said that he was waving a gun at me. He had a gun right on me."

While Ellis went inside to obey the command, the robber kept his weapon aimed at Harrison, who was facing him from a point only a foot or so from the car. Then Ellis returned with the cash box containing $311 and handed it to the bandit, who drove away. At the trial, Ellis testified as to the robbery, but said he could not identify Mitchell because he had only brief glimpses of the man. When Ellis returned with the money box, the appellant "was still sitting in his car with the gun out the window and had the gun pointed on Mr. Harrison." Ellis identified the gun as "similar to that when he was waving that gun at me." He testified he told the police he could not identify the robber.

Harrison, however, unqualifiedly identified Mitchell as the robber, and further testified that he had also identified him in a jail line-up on July 22, 1959. He said he stood within a foot or two of the car and that for at least five minutes he looked directly at appellant, who held him at gun-point and threatened to kill him if Ellis did not bring him the cash box. The evidence showed Mitchell had formerly worked at the filling station and knew that, at closing, the receipts were placed in a cash box in the third drawer of the filing cabinet.

Substantial testimony from other witnesses placed Mitchell in the vicinity at the time of the hold-up, showed that he possessed a gun, and tended strongly to indicate his guilt. When he was arrested some days later in his apartment in Baltimore, under a warrant charging him with flight to avoid prosecution, an incidental search revealed a loaded gun which Harrison said was similar to that with which he was threatened.

The appellant testified that at the line-up Ellis identified one Adcock, another inmate of the jail, as the person who robbed him, and Adcock testified to the same effect. Ellis had said, however, that he had not positively identified Adcock in the line-up but merely said he "favored" the bandit.

With this evidential background, we examine and epitomize the grounds for relief alleged by appellant in the motion which was denied November 2, 1959. In points 1 and 2, he alleged he was convicted solely on circumstantial evidence and

that a witness for the United States committed perjury which he could have proved by Captain Brown; that in not calling Captain Brown as a witness and in not objecting to the District Attorney's questions about his wife's age, etc., his counsel had failed to render him effective assistance.

■ Before proceeding further, we stop to consider whether the sentencing judge abused his discretion in not granting a hearing with respect to points 1 and 2. Appellant's assertion that he was convicted solely on circumstantial evidence would not have been a ground for relief under § 2255 had it been true; but the record shows it was not true. His contention that Ellis committed perjury in saying he did not positively identify Adcock as the bandit was based on his assertion that Captain Brown, who was not called as a witness, would corroborate Mitchell and Adcock in their contradiction of Ellis in that regard. This was insufficient to warrant relief under § 2255 for two reasons: (a) Brown's testimony would have been merely cumulative to that of two witnesses who actually contradicted Ellis, and (b) that Ellis, who had little opportunity to observe the bandit, identified the wrong man, as two witnesses said he did, could hardly have persuaded the jury to disbelieve the positive identification of Mitchell by Harrison, who had excellent opportunity to observe, and whose testimony was uncontradicted, unimpeached and unshaken on cross-examination. The failure of appellant's retained counsel to call Captain Brown, who was absent on vacation, does not amount to ineffective assistance, in view of the fact that two witnesses had testified to what appellant now states he expected Brown to say. Other allegations of ineffective assistance of counsel are even more frivolous.

■ The facts just recited appeared in the record, which therefore conclusively showed, as the judge said, that on points 1 and 2 of his motion the prisoner was entitled to no relief. We conclude the sentencing judge did not abuse his discretion in so holding.

■■ Points 3 and 4 of the appellant's motion alleged the pistol was illegally seized in an unlawful search, and that, after his arrest in Baltimore, he was held for two and one-half days before arraignment. The record showed the seized gun was not identified by the victims as the hold-up weapon, so it played practically no part in the conviction. Anyway, it was seized in a legal search after a lawful arrest under a warrant, and appellant did not object to its admission in evidence. It was clearly admissible. Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

■ The alleged detention before arraignment did not produce a confession or any inculpatory statement. If such detention occurred, it was not a ground for relief under § 2255 from a conviction which was not in any way produced by it. We conclude the sentencing judge did not abuse his discretion in declining to conduct a hearing under § 2255 with respect to points 3 and 4 of appellant's motion.

In sum, we hold the sentencing judge exercised sound discretion in denying the motion on the ground that it and the files and records conclusively showed Mitchell was entitled to no relief. The order of November 2, 1959, from which the appeal was taken, is therefore affirmed.

Our decision would not be different if this had been a direct appeal from the judgment of conviction, as the appellant contended. His argument on the merits presented two points for reversal: (a) that he was convicted on perjured testimony, and (b) that the conviction was based on evidence obtained by an unlawful search and seizure. It is at once seen that these points are merely repetitions of allegations made in the motion under § 2255.

Probably it should be mentioned that appellant appended to his brief the affidavit of Captain Brown that at the line-up Ellis unqualifiedly identified Adcock as the perpetrator of the crime. This information was never presented to or considered by the District Court, and the affi-

davit is not a part of the record before us. We have nevertheless considered appellant's contention that Brown would testify as his affidavit indicates and, as we have said, have concluded his testimony would have been immaterial in any event. Ellis testified affirmatively before the jury that he could not identify the robber. That he may at a police line-up have identified another in no way displaces or impeaches Harrison's positive identification and the other circumstantial evidence of appellant's guilt. Brown's testimony, had it been offered and received, could not invalidate the jury's finding on the evidence before it.

 It is, therefore, clear that the jury accepted Harrison's identification in spite of the testimony of two witnesses who said Ellis identified another. A third contradiction of Ellis would not have detracted from the probative value of Harrison's testimony and that of other witnesses for the prosecution. It is the function of the jury to pass on the powers of observation of a witness and his credibility. Thompson v. United States, 1951, 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653. In Glasser v. United States, 1952, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, the Supreme Court said:

> "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. * * *"

The appellant's reliance upon Mesarosh v. United States, 1956, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1, is misplaced. There the Solicitor General's representations to the court were tantamount to a repudiation of the credibility of a key witness who had been "wholly discredited." Id., 352 U.S. at page 9, 77 S.Ct. at page 5. Here the conviction did not rest

upon clearly false testimony, nor did it depend upon what Ellis said. Indeed, had he not been called, other substantial evidence was ample to sustain the verdict. We are persuaded that a mere recital of the evidence distinguishes the instant case from the situation presented in Mesarosh.

We think Mitchell was fairly tried and convicted on ample evidence. We are further of the view that Captain Brown's testimony would not produce an acquittal at a new trial. Either on the motion or the merits, the judgment of conviction must be upheld.

Affirmed.

FAHY, Circuit Judge (dissenting).

In his post-conviction motion styled "Motion questioning the trueness of indictment," treated by the District Court as a motion under 28 U.S.C. § 2255 (1958), appellant alleged that on his trial for robbery at which the identity of appellant as the robber was critically in issue, perjury on that issue was committed by the government witness Ellis. Ellis denied at the trial that he had previously made a positive identification of another person, Adcock, as the robber. We have before us an affidavit of a Captain of the Metropolitan Police Department, the officer who conducted the line-up at which the identification in question was made, that Ellis positively identified the other person, without qualifying or limiting the identification in any manner, flatly in contradiction of Ellis' testimony at the trial.

If the Captain's affidavit is true appellant has been convicted with the material aid of testimony offered by the government, established to be false by a responsible public official directly concerned with the investigation of the case, whose affidavit has not thus far been factually countered in any way by the government.[1]

In these unusual circumstances, and applying the basic principles which I

---

1. A motion to strike the affidavit on the ground it was first presented in this court, and not to the District Court, was filed by the United States and granted by this court, with the present writer voting to deny.

think underlay the decisions of the Supreme Court in Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1, and Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, appellant's motion at least calls for a hearing by the District Court to determine whether clearly false testimony of Ellis was used to convict appellant. The omission thus far of the government to deny the allegations of Captain Brown's affidavit places the representations before us in a position somewhat comparable to that occupied by the representations made by the Solicitor General to the Supreme Court in Mesarosh; and though the facts before us are different from those in Napue, and while that case may be a stronger one than this, the issue of due process is similar. That issue is whether a conviction may stand when it rests upon clearly false testimony brought to the attention of the appellate court by a government official who investigated the case for the prosecution and whose representations of the falsity

of the testimony relied upon by the government are not challenged by the government. I would not consider the Captain's affidavit as merely cumulative of the testimony of appellant and another inmate of the jail that Ellis had identified Adcock, for the Captain's occupies a very different position in the case.

Should a hearing result in a finding that Captain Brown's affidavit is true then appellant should be granted a new trial.

In the view I take, as above, of what seems to me the controlling issue on the appeal, it appears unnecessary to discuss other matters; but I add that when the District Court enters an order on a section 2255 motion that "the motion, files, and records conclusively show the petitioner is entitled to no relief" I think the court has entertained, considered, and decided the motion. While an evidentiary hearing is one way of entertaining a motion under section 2255, it is not the exclusive way.